Hon. John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY BENCHLEY and SHAWN BENCHLEY, husband and wife individually and in their capacity as shareholders and officers in BENCHLEY VENTURES, INC., d/b/a Roadhouse of Enumclaw,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ENUMCLAW, a Washington municipal corporation; BRIAN LYNCH; TONY RYAN; STEVE PERRY; JOHN WISE; and JIM ZOLL, individually,<br><br>Defendants. | Case No. C08–1322–JCC<br><br>ORDER |

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. No. 30), Plaintiffs' Response (Dkt. No. 63), Defendants' Reply and Motion to Strike (Dkt. No. 66), and Plaintiffs' Opposition to Defendants' Motion to Strike and Surreply[1] (Dkt. No. 68). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Defendants' motion, for the reasons explained herein.

---

[1] Plaintiffs' Surreply is not properly before the Court. The Local Rules provide that a surreply may be filed only subject to certain conditions, including that: (1) the party filing it must first file a notice of intent to file the surreply; (2) the surreply must be strictly limited to addressing that party's own request to strike material contained in the opposing party's reply brief; and (3) the surreply may not exceed three pages. Local Rules W.D. Wash. CR 7(g). None of these conditions has been met. Accordingly, the Court declines to consider the arguments contained in Plaintiffs' Surreply.

ORDER
Page - 1

**I.  BACKGROUND**

Plaintiffs Jeffrey and Shawn Benchley, husband and wife, bring this action against the City of Enumclaw, Washington; Enumclaw Police Officers Bryan Lynch, Tony Ryan, and Steve Perry; Police Chief Jim Zoll; and Enumclaw Mayor John Wise, based on events occurring while Plaintiffs owned the Roadhouse of Enumclaw ("the Roadhouse"), a restaurant and bar that has since gone out of business. (*See* Am. Compl. (Dkt. No. 22 ).) The pertinent facts are as follows.

Since 2001, Plaintiffs have owned a profitable restaurant and bar in the town of Cumberland, Washington: the "City Hall Saloon." (S. Benchley Decl.¶¶ 3, 7, 9 (Dkt. No. 62).) Plaintiffs, avid motorcyclists, instituted an informal weekly "bike night" at the City Hall Saloon, which attracts motorcycle riders from across the State. (*Id*. ¶ 10.) Based on their success operating the City Hall Saloon, Plaintiffs decided to open a second bar and restaurant. (*Id*. ¶ 11.) To that end, in 2005, after consultation with the Enumclaw city building inspector, Plaintiffs purchased a fire-damaged, 8,500-square-foot building in Enumclaw for $535,000, with the intention of refurbishing it and opening a bar and restaurant with a gaming area and space for live music performances. (Am. Compl. ¶¶ 18–21 (Dkt. No. 22).) Plaintiffs spent approximately $800,000 refurbishing the building and preparing it for business. (*Id.* ¶ 25.) On Saturday, December 8, 2006, the Roadhouse officially opened and was filled nearly to capacity with patrons. (*Id*. ¶ 33.) During the following few weeks, the Roadhouse continued to attract customers, earning a net revenue of approximately $50,000 in December 2006. (*Id*. ¶ 35.)

Plaintiffs contend, however, that shortly after the Roadhouse opened its doors, the Defendant police officers, at the direction of Defendants Mayor Wise and Chief Zoll, "began a campaign of ongoing, unreasonable, and arbitrary law enforcement conduct and selective law enforcement actions directed against the Roadhouse and its patrons." (*Id*. ¶ 40.) Plaintiffs assert that this conduct included nightly "bar checks," during which officers would enter the building and observe patrons for evidence of underage drinking or other problems. (*Id*. ¶¶ 41–44.) Plaintiffs also contend that the officers, on a near-nightly basis, parked their patrol cars outside the Roadhouse or

across the street and often arrested Roadhouse patrons for driving under the influence of alcohol. (*Id.* ¶¶ 61–67.) It is undisputed that on two occasions in January and February 2007, the Washington State Liquor Control Board ("WSLCB"), the Washington State Patrol ("WSP"), and the Enumclaw Police Department ("EPD") engaged in joint enforcement efforts at the Roadhouse, which involved undercover WSLCB enforcement officers observing patrons and staff and pointing out violators to police officers, resulting in the issuance of infractions to approximately ten Roadhouse patrons for consuming alcohol while intoxicated. (*Id.* ¶¶ 49–51, 56–57.) The Roadhouse was also cited on both occasions for over-serving patrons. (*Id.* ¶¶ 53, 58.)

The explanation for the police activity, Plaintiffs contend, is that Enumclaw officials had devised an "equestrian theme" marketing plan to promote tourism. (Resp. 2 (Dkt. No. 63); S. Benchley Decl. ¶ 28 (Dkt. No. 62).) Plaintiffs allege that Defendants were concerned the Roadhouse would attract a "motorcycle crowd," clashing with the town theme and impacting tourism. *Id.* In response, Plaintiffs claim, Defendants selectively enforced the law against the Roadhouse and its patrons in an effort to drive them out of business. *Id.*

According to Plaintiffs, customers stopped patronizing the Roadhouse because of the law enforcement presence and actions there. (Am. Compl. ¶¶ 60, 70, 71 (Dkt. No. 22).) Plaintiffs report that, despite its initial profitability in December 2006, the Roadhouse thereafter began to generate revenue that was often barely sufficient to pay employees' salaries and payroll taxes. (*Id.* ¶ 73.) Plaintiffs listed the Roadhouse for sale in March 2007 in an effort to avoid foreclosure, and sold it in February 2008 for an amount at least $1,000,000 less than its appraised value. (*Id.* ¶¶ 76–77.)

Plaintiffs initiated this suit in September 2008, bringing claims under Title II of the Civil Rights Act, 42 U.S.C. § 1983, alleging that Defendants violated their constitutional rights to pursue the common occupations or professions in life through a campaign of excessive, unreasonable and arbitrary law enforcement intended to cause Plaintiffs' business to suffer loss of patronage and revenue. (*Id.* ¶¶ 81–89.) In addition, Plaintiffs argue that Defendants violated their constitutional equal-protection rights by singling them out for excessive law enforcement without a rational basis

or for an improper motive. (*Id.* ¶¶ 91–96.) Plaintiffs also bring state-law tort claims for tortious interference with business expectancies against all Defendants, and Plaintiff Jeffrey Benchley brings a claim for intentional infliction of emotional distress against Defendants based on his alleged stress-related symptoms of increased blood pressure and sleeplessness. (*Id.* ¶¶ 97–113.)

In the instant motion, Defendants argue that the law enforcement actions taken at or near the Roadhouse were justified, as evidenced by the fact that the bar was the subject of more than one hundred calls for police service and that it was one of the top DUI originators in Washington. (Mot. 1 (Dkt. No. 30).) Defendants argue additionally that each of them is entitled to qualified immunity, and that there is no basis for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). (*Id.* at 10–13, 19.) Defendants also argue that Plaintiffs' substantive due-process claim is without merit. (*Id.* at 15–17.) Defendants contend further that Plaintiffs cannot show they were irrationally singled out as a "class of one" for purposes of equal-protection analysis. (*Id.* at 13–15.) Finally, Defendants argue that Plaintiffs' state law claims fail as a matter of law.

The Court will address each of these issues in turn.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Id.* at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that nonmovants have failed to produce evidence that supports an element essential to the nonmovants' claim. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

## III. ANALYSIS

### A. Substantive Due Process

The Supreme Court has long recognized "that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286 (1999) (citing *Dent v. West Virginia*, 129 U.S. 114 (1889), and *Truax v. Raich*, 239 U.S. 33 (1915)); *see also Bd. of Regents v. Roth*, 408 U.S. 564 (1972) (stating that the liberty interest guaranteed by the Fourteenth Amendment includes the right "to engage in any of the common occupations of life") (citation and internal quotation marks omitted). The Ninth Circuit has maintained that "it is well-recognized that the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 65 n.4 (9th Cir. 1994).

The Supreme Court has observed that the cases establishing a due process interest in one's occupation "all dealt with a complete prohibition of the right to engage in a calling," and not merely a "brief interruption" in one's ability to pursue an occupation or profession. *Conn*, 526 U.S. at 292. For example, in *Roth*, the Supreme Court held that due process was not implicated where the state chose not to rehire a non-tenured professor because the state had not barred him "from all other public employment in state universities" or otherwise "foreclosed his freedom to take advantage of other employment opportunities." 408 U.S. at 573. In *Dittman v. California*, the Ninth Circuit sought to bring clarity this area of law, noting that the right had been "largely undefined." 191 F.3d 1020, 1029 (9th Cir. 1999). The court adopted *Conn*'s "complete prohibition" standard, finding that a state law implicated due process rights because requiring

disclosure of the plaintiff's Social Security Number to obtain an acupuncture license operated as a complete barrier to entry into the profession of acupuncture. *Id.* Likewise, in *Llamas v. Butte Cmty. College Dist.*, the Ninth Circuit held that because the plaintiff had "not been banned from pursuing a janitorial position elsewhere or a career in law enforcement as he desire[d]," but rather was foreclosed only from working for the Butte Community College District, defendant had not violated his due process rights. 238 F.3d 1123, 1128 (9th Cir. 2001).

In the wake of *Dittman*, the Ninth Circuit law requires a plaintiff claiming violation of due process rights to demonstrate a complete barrier to her chosen profession. Based on *Conn* and *Dittman*, Defendants argue that because Plaintiffs continue to operate a profitable bar in nearby Cumberland, the City Hall Saloon, Plaintiffs have not been completely foreclosed from pursuing their chosen profession of operating a bar, and therefore their Fourteenth Amendment rights cannot have been violated. (Mot. 16–17 (Dkt. No. 30).) Plaintiffs claim this would preclude due process suits in all instances other than those where a plaintiff can show "he has been completely banned from pursuing his occupation ever, anywhere." (Response 6 n.1 (Dkt. No. 63).) Plaintiffs do not, however, offer support to suggest that their hypothetical conclusion is incompatible with controlling precedent. Instead, Plaintiffs maintain that that a loss of profitability at the Roadhouse, which led to a sale of the bar, nonetheless implicates due process.[2] The Court finds no support in the law for this contention. A state does not violate a party's constitutional rights every time

---

[2] The Court is aware of two Ninth Circuit opinions dealing with Section 1983 claims brought by bar owners alleging that unreasonable or selective law enforcement amounted to violations of their liberty interests in the right to pursue an occupation of their choosing. Both of these cases, however, employ a broad definition of deprivation that both predates, and is incompatible with, the Supreme Court's holding in *Conn*, and the Ninth Circuit's adoption of this standard in *Dittman*. In *Freeman v. City of Santa Ana*, the Ninth Circuit considered an allegation that a bar owner had been forced out of business by excessive and unreasonable police conduct stemming from retaliation for her filing a complaint against a police officer, but ultimately found insufficient causal connection between the police conduct and the complaint. 68 F.3d 1180, 1189 (9th Cir. 1995). In *Benigni v. City of Hemet*, the Ninth Circuit held that a substantive due process claim was properly submitted to the jury where the evidence supported "a conclusion that excessive and unreasonable police conduct was intentionally directed toward [plaintiff's] bar to force him out of business." 879 F.2d 473, 478 (9th Cir. 1988). Both courts treat the issue in a cursory way. But even if either of these opinions contained direct analysis of a due process interest in occupational liberty, the Court would not be free to disregard later, controlling precedent.

legitimate, rational policy affects that party's occupation. *See Llamas,* 238 F.3d at 1128 ("We have consistently held that people do not have liberty interests in a specific employer.").

Plaintiffs have presented no evidence to suggest that they face a complete prohibition on their chosen profession, as required by *Conn*. Accordingly, Plaintiffs' substantive due process claim fails as a matter of law.

**B. Equal Protection**

Plaintiffs also claim that Defendants violated their rights to equal protection of the law under the Fourteenth Amendment. They argue that Defendants singled out the Roadhouse and subjected them to excessive law enforcement without a rational basis. (Response 14–15 (Dkt. No. 63).) "The first step in equal protection analysis is to identify the defendants' classification of groups." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. Cal. 1995) (citing *Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988)). Here, Plaintiffs seek to invoke the "class of one" theory, set forth by the Supreme Court in Village of *Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000) (per curiam). Where a plaintiff cannot establish that she is being discriminated against for membership in a protected class, she can succeed as a "class of one" by establishing that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See id.* at 564.

The next requirement a plaintiff must fulfill is to identify a "similarly situated" class against which the plaintiff's class can be compared. *Freeman*, 68 F.3d at 1187. "The goal of identifying a similarly situated class . . . is to isolate the factor allegedly subject to impermissible discrimination. The similarly situated group is the control group." *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989), cert. denied, 498 U.S. 1046 (1991).

For the purpose of identifying similarly situated parties where the plaintiff has a record of criminal activity or regulatory non-compliance, courts in the Ninth Circuit use a tailored approach. Rather than consider all entities in the same line of business, courts look for parties

with qualitatively and quantitatively comparable activity. For example, in *Squaw Valley Dev. Co. v. Goldberg*, the court rejected plaintiff's "class of one" argument by noting that, while the plaintiff was not the only landowner whose actions affected the body of water in question, the plaintiff presented no evidence that other landowners had a similar history of activity or non-compliance. 375 F.3d 936, 945 (9th Cir. 2004). Likewise, in *Baxter v. Preston City*, the court affirmed a grant of summary judgment, finding that while the city had enforced an ordinance prohibiting use of land as a livestock-feeding lot against plaintiffs and not plaintiffs' neighbor, the plaintiffs had failed to demonstrate that their neighbor was similarly situated to themselves. 1991 U.S. App. LEXIS 8796, *7 (9th Cir. May 3, 1991). The court elaborated on plaintiffs' deficiencies: "[Plaintiff] did not provide affidavits or declarations supporting the conclusory allegations in their complaint. There was no evidence regarding specific violations by other parties, or evidence that complaints were made to the City regarding those violations (as they were regarding the [plaintiffs]) or that the City even knew of those alleged violations at the time it entered its ordinance against the [plaintiffs]." *Id.*

In a summary judgment motion, the moving party bears the initial burden of showing that nonmovants have not provided evidence to support the nonmovants' claims. *Celotex*, 477 U.S. at 322. Defendants state that Plaintiffs have failed to submit evidence to support Plaintiffs' claim that other bars or restaurants had a level of complaints or criminal activity that would qualify them as similarly situated to the Roadhouse. (Reply 8 (Dkt. No. 66.)) The Roadhouse was (1) the twelfth highest originator of DUI arrests in Washington State, (2) frequented by people with outstanding warrants, and (3) the location of fourteen Disturbance/Fight entries in the Enumclaw police Call For Service log over a thirteen-month period. (Reply 6 (Dkt. No. 66); Hopkins Decl. Exs. A, C (Dkt. 32).) The sum of Plaintiffs' evidence for the proposition that other Enumclaw establishments had a similar level of complaints and criminal activity is one sentence in their Response, supported by a single Declaration, stating "both the Crystal and Seeder's are known to have fights on occasion." (Response 14–15 (Dkt. No. 63).) This statement is far too vague to

constitute a genuine issue of fact. *See Anderson*, 477 U.S. at 248–50 (an issue is not genuine unless a reasonable jury could return a verdict for that party). Defendants have met their burden; they have shown that Plaintiffs fail to make a showing sufficient to establish the existence of an element essential to their case.

Once the movant has met her burden, the nonmoving party must show that there is a genuine issue of material fact in order to prevent summary judgment. *Anderson*, 477 U.S. at 250. Plaintiffs contend that they presented adequate evidence to create a triable issue of fact that Seeder's Steak & Brew House ("Seeder's") and the Crystal Bistro ("the Crystal") are similarly situated in that they both have business licenses similar to the Roadhouse and, in the case of Seeders, the same live music schedule. (Response 14–15 (Dkt. No. 63).) Without the sort of evidence the Ninth Circuit requested in the line of cases discussed above, however, Plaintiffs have not demonstrated that other Enumclaw establishments are similarly situated, a necessary step in an equal protection claim. *See Freeman*, 68 F.3d at 1187. Accordingly, Plaintiffs' equal protection claims fail as a matter of law.

**C. Qualified Immunity**

The Court finds that a determination of qualified immunity is not necessary. Qualified immunity is determined in two steps. First, the Court must consider the threshold question of whether, taken in the light most favorable to Plaintiff, the facts alleged show that the defendants' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Plaintiffs bear the burden of proving this issue. *Crawford-El v. Britton*, 523 U.S. 574, 589 (1998). Second, the Court must consider whether such right was "clearly established" at the time of the incident. *Id.* The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Defendants bear the burden of proving this issue. *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005). Both considerations must be established in the affirmative to defeat a defendant's motion for summary judgment.

Here, because no constitutional right was violated, Plaintiffs have failed to meet their threshold burden. No further consideration of qualified immunity is required. *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001).

With no remaining constitutional claims on which to base it, Plaintiffs' Section 1983 claim is DISMISSED as a matter of law.

### D. State Law Claims

Two state law claims are alleged against all Defendants based on the same facts. Both Plaintiffs claim "tortious interference with business expectancies" (Am. Compl. ¶¶ 97–106 (Dkt. No. 22 at 14–15).) Plaintiff Jeff Benchley also claims intentional infliction of emotional distress. (*Id.* ¶¶ 107–113.) Non-diversity state claims do not come under the Court's original jurisdiction. The only possible basis in which the Court could exercise jurisdiction over Plaintiffs third and fourth causes of actions would be under federal supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Under § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over claims if it has dismissed all claims over which it has original jurisdiction. Here, because all federal claims have been dismissed as a matter of law, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state claims. Accordingly, Plaintiffs' third and fourth causes of action are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

### E. Plaintiffs' Request for Rule 56(f) Continuance

Plaintiffs request a Rule 56(f) continuance as an alternative to the Court's denial of Defendants' Motion for Summary Judgment. (Pls. Resp. 23–25 (Dkt. No. 63).) Under Rule 56(f), in pertinent part, "if a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken[.]"

In support of a Rule 56(f) continuance, a movant is required to identify specific facts that further discovery would reveal or to explain why those facts would preclude summary judgment.

*Hall v. State of Hawaii*, 791 F.2d 759, 761 (9th Cir. 1986) (holding that a plaintiff must make clear what information he is seeking and how it would preclude summary judgment); *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100–1101 (9th Cir. 2006) (Plaintiff must refer to specific facts, rather than merely allege that deposition transcripts are unavailable). Here, in their pending discovery motions, Plaintiffs generally argue that Defendants have not properly made depositions available and that the answers to interrogatories have been deficient. (*See* Dkt. Nos. 33, 42.) Plaintiffs do not identify any specific facts that further discovery would reveal, or explain how such facts would defeat Defendants' instant summary judgment motion. Accordingly, because Plaintiffs have not made this required showing, Plaintiffs' request for a Rule 56(f) continuance is DENIED.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. No. 30) is hereby GRANTED, and Plaintiffs' request for 56(f) Continuance is DENIED. The Clerk is directed to DISMISS the case. All other motions pending (Dkt. Nos. 27, 33, 42) are DENIED as MOOT.

SO ORDERED this 8th day of October, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE